FRED V. BUSER, Treasurer of Des Moines County, et al., Appellants, v. THEODORE W. KRIECHBAUM et al., Executors,. Appellees.

No. 44097.

MARCH 15, 1938.

REHEARING DENIED JUNE 24, 1938.

D. L. Murrow and Merrill Gilmore, for appellants.

Charles C. Clark and Ben P. Poor, for appellees.

RICHARDS, J.—On November 14 and 15, 1935, this action, brought to recover taxes upon allegedly omitted taxable securities, was tried upon the merits in the district court. The trial

was to the court without a jury. The following entry was made on the judge's calendar: ''Nov. 15-35. Trial proceeded. Plaintiff offers his evidence and having rested the defendants make an oral motion that the cause ·be dismissed at plaintiff's costs, which motion is sustained. Plaintiff excepts thereto.'' Concededly these proceedings of the court were not entered in the district court record book until some date later than November 15, 1935. The clerk made no designation or recital upon his records indicating the date on which these proceedings were in fact so entered.

In September, 1936, plaintiffs filed in the district court an application and motion in said action, reciting among other things that the entry in the record book was not made earlier than December 12, 1935, and that said record had not yet been signed by the district judge at the date of the filing of the application and motion. The prayer was that the court direct the clerk to enter a recital upon his records that said court proceedings were not entered upon the district court record book earlier than December 12, 1935, and a recital that such entry was made on December 12, 13, or 14, 1935, as the fact may appear upon a hearing upon the application. This application and motion was denied upon the hearing thereon and the appeal taken by plaintiffs from that ruling is the matter now before us.

The parties predicate their respective contentions primarily upon the question of fact as to when the proceedings were actually entered upon the district court record book. The entry bears the same date of the memorandum upon the judge's calendar, i. e., November 15, 1935. But it is conceded that the entry was made subsequently thereto. It clearly appears that the clerk's office employee, a Miss Fitzpatrick, whose duty it was to formulate and then make the entry on the record book, purposely deferred the doing of these things. The principal reason was the fact that there was some difficulty in her mind, as well as in the mind of the deputy clerk, as to the formulation or wording of the entry to be made. Also, she thought that possibly a prepared decree would be brought in. One of the difficulties that restrained this employee was a question or doubt with respect to the party against whom judgment for the costs should be entered, whether it should be against the county treasurer or the State Board of Assessment and Review. From the testimony of John A. Dailey, the county attorney, it clearly appears that

on December 12, 1935, this question as to a judgment for costs in the entry to be made had not yet been determined by the office force of the clerk's office. This appears from the discussion on that date between the deputy clerk, a Miss Inghram, and the county attorney as to who should pay the court costs, the deputy clerk being apparently still undecided. The matter was settled during the discussion by the county attorney giving approval to entering up the costs against his client the plaintiff, county treasurer, the county attorney also telling the deputy clerk that probably the State Board of Assessment and Review would take care of these costs. These occurrences were incidental to the mission of this witness, the county attorney, to the clerk's office on December 12, 1935. He had gone there to procure a certified copy of the record of the proceedings. Upon making to the deputy clerk a request for such certified copy, he was informed by her that the judgment entry was not yet all made up. The result was that the county attorney did not obtain a certified copy on that date. According to the county attorney's testimony, instead of Miss Inghram furnishing the certified copy, she advised him that they would complete the entry and that then he could get the copy as soon as the record was completed. He did obtain the certified copy on a later day. The date of clerk's certification appearing thereon is December 14, 1935.

During the interval between November 15, 1935, and December 12, 1935, Miss Inghram had consulted with attorneys for *defendant* with respect to whether a decree would be prepared and brought in and on being told that such would not be done, she had talked with them with respect to the formulating of the entry. But it was not until December 12 that there was discussion with the county attorney, counsel for the *plaintiff* against whose interests the judgment would be, if entered, as to the entering a judgment against the county treasurer, the propriety of which was doubtful to Miss Fitzpatrick and the deputy clerk. It was not until December 12 that the deputy clerk had the approval of counsel on both sides, particularly counsel for the party against whom the judgment would be if rendered by the record to be entered. This circumstance adds to the probability that the record was not completed at the time of these occurrences on December 12, as stated by the deputy clerk on that day as the fact and reason on account of which a certified copy

could not be made. When Miss Fitzpatrick originally put off to some later time the entering of the proceedings, a page of the record book was left blank for making the entry. The record book was what is known as a loose-leaf book, the pages being removable. The sheet that was reserved for making the entry in question was taken out of the record book and was seen by several persons upon the typing desk of the employee, Miss Fitzpatrick, prior to December 12, 1935, and it is quite probable that she had entered upon the task of making this entry upon the sheet before December 12. There is testimony of one of the attorneys for defendant that he saw this sheet with writing upon it and that he went over to the office of his associate counsel and reported what he had seen. Somewhat suggestive that the entry was merely in the process of being formulated on the sheet and that the making of the entry had not been fully or finally accomplished is the fact that this witness asked his associate counsel to go over and look at it. Neither Miss Fitzpatrick, nor any other person comprising the clerk's office force knew the date when the entry actually went into the record book. No witness claims to have seen the sheet in the record book at any time after it was removed therefrom, and this includes the entire office force, all of whom testified. The witnesses, excepting one, who saw the entry sheet lying on the work desk of Miss Fitzpatrick were not able to fix the dates thereof with any certainty, their testimony in that respect being vague, and in the nature of opinions as to what probably happened. But in the testimony of one witness, the county attorney, there is a fixing of the date of the occurrence that he describes that appears to be unquestionable. That is, a letter, that is in the record, was written to this witness from Ottumwa on December 11, requesting this witness to procure a certified copy of the record. Upon receipt of the letter, on December 12, the witness acted thereon on the same day, and his errand to the clerk's office was to procure the certified copy requested by the writer of the letter. And it is a circumstance of considerable significance that on this definitely fixed date the sheet on which the entry now appears was still a loose sheet, shown to the witness by Miss Fitzpatrick or Miss Inghram, and was not yet in the record book.

We cannot but think that the district court had a misconception as to the character and weight of at least portions of the testimony. Among the recitals set out in the trial court's opin-

ion as sustaining the order dismissing the application is this: "The evidence of the Clerk of the Court, Mr. Jackson, is to the effect that this was done within a week after November 15th.," (the court referring to the filling out of the blank page and making it a part of the record book). But the clerk's testimony was in fact the following:

"Q. That was when, I mean the entry in the District Court Record written into the records of your office, what would be your best judgment as to the time this entry was written into the book in relation to the day of pronouncement?

"Mr. Gilmore: Objected to as incompetent, irrelevant, and immaterial, witness not shown that he has such knowledge, and calling for his opinion and conclusion and speculation.

"The Court: It will be taken subject to the objection.

"A. I recall the entry. I don't recall making it. I didn't see it made.

"Q. What would be your best judgment of when you saw that? A. Merely an opinion is all I can give.

"Mr. Gilmore: Same objection.

"The Court: Answer, subject to the objection.

"A. I would say it was made within a week of the date, November 15th."

The trial court also drew certain conclusions from the fact that "the judgment was entered on the judgment docket and properly indexed". But, in view of the conceded facts, it does not appear to us that any conclusions from what appears on the judgment docket throw light on the question as to when the proceedings were entered upon the record book. The deputy clerk and the employee Miss Fitzpatrick testified that they were unable to state when the proceedings were entered in the record book. We are unable to arrive at any other conclusion than that the entering of the proceedings upon the record book had not been accomplished and completed prior to December 12, 1935, a date we accept as established by the matters shown in the testimony of the county attorney. As we view the record there is no substantial contradiction of the testimony of this witness, particularly as to the date, and the occurrences he relates. Plaintiff's application and motion should have been allowed and the clerk should have been ordered to make an entry as prayed

1152

therein. The case is reversed and remanded with instructions to enter order accordingly.—Reversed with instructions.

STIGER, C. J., and ANDERSON, HAMILTON, MILLER, KINTZINGER, and MITCHELL, JJ., concur.